1  STEVEN E PAGANETTI State Bar number 087513

2  2461 Den Street

3  St. Augustine Florida 32092

4  Telephone number: (559–284–9642)

5  Email: stevepaganetti@gmail.com

6  ( In Pro Per)

7

8

9  **United States District Court**

10  **Central District of California**

11

12  **Mahaffey Law Group, P.C.**

13

14  **Plaintiff**

15

16  VS

17  **Steven E Paganetti**

18

19  **Defendant**

20

)
)  **Case No.8:19-CV-01920-DOC-DFM**
)
)  **Memorandum Of Points And Authorities In Support**
)  **Defendants Motion To Dismiss F.R.C.P. 12(b)(6)**
)
)
)  **Date: December 2, 2019**
)
)  **Time: 8:30 A.M.**
)
)  **Dept: 9D**
)
)  **Judge: David O. Carter**

21  Defendant Steven E Paganetti ("SEP") hereby submits the following memorandum of points and

22  authorities in support Motion to Dismiss the second, fourth and fifth causes of action of Plaintiff

23  Mahaffey Law Group P.C. ("MLG") complaint .

24  /////

25  /////

26

27  ////

28  ////

1

## Table of contents                                    Page

2

    I.   Introduction ................................................................. 4

3

    II.  Summary Of Factual Allegations ……………………………………5,6,7

4

    III.  Statement Of Facts…………………………………………………7,8,9

5

    IV. Legal Argument……………………………………………………10

6

    A. MLG Second, Fourth and Fifth Causes Of Action Are Barred By The Doctrine Of

7

Res Judicata…………………………………………………………………10,11,12,13

8

9

    B. MLG Claims Of Fraud, and Conversion Are Barred By The Three-Year Statue

10

Limitations CCP Section 338 (c)(d)………………………………………15,16,17

11

    C. MLG Second Cause Of Action For Fraud Fails To State A Claim……….17,18,19

12

    D. Plaintiff Cannot Maintain a Cause Of Action For Breach of Contract………19,20

13

    E. MLG Fails To State a Claim For Conversion…………………………………..20

14

15

    V. Conclusion………………………………………………………………………..20

16

17

## Table of Authorities

18

### Cases

19

20

*Allign Tech.Inc. v.Tran (2009) 179 Cal App 4th 479*……………………………………..12

21

*Ashcroft v Iqbal, 556 U.S.662 (2009)* ………………………………………………17

22

*Baker v. Beech Aircraft Corp. (1979) 96 Cal App. 3d 321*…………………………………16

23

*Bostick v Flex Equipment Co., Inc. (2007) 147 Cal App 4th 80,96*………………………..10

24

*Careau & Co. v Security Pacific Business Credit, Inc., (1990) 222 Cal App 3d 1371,1388*……19

25

*Curry Med. Spec. Inc v.Bowen (1982) 231 Cal App 3d 774*…………………………………12

26

*Fox v. Ethion Undo-Surgery,Inc (2005) 35 Cal 4th 797*………………………………………16

27

*Eichman v. Fotomat Corp.(1983) 147 Cal App. 3d 1170*…………………………………14

28

*Engalla v Permanente Medical Group,Inc.(1997) 15 Cal.4th 951*................................18

*King Bros. Prod.Inc v. RKO Teleradio Pic. Inc. (1962) 208 F2d 271*.............................12

*Kline v Turner (2001) 87 Cal App.4th 1369,1374*.................................................15

*Marrese v American Academy of Orthopedic Surgeons (1985) 470 U.S. 373*....................10

*McNulty v Copp (1954) 125 Cal App 2d 697,705*.................................................11

*Moore v. Regents of the Univ. Of Cal. (1990) 51 Cal 3d 120,126*..................................20

*Nakash v Superior Court (1987) 196 Cal App.3d 59,68*..............................................11

*Panos v Great Western Packing Co.(1943) 21 Cal 2d.636,637*......................................10

*Rosenthal v. Great W. Fin. Sec. Corp. (1996) 14 Cal 4th 394*.......................................18

*Saunders v. New Capital for Small Bus. Inc (1964) 231 Cal App 2d 324*..........................13

*Slater v Blackwood (1975) 15 Cal 3d 791,795*....................................................10,11

*Somers v Apple 729 F. 3d 953,959.(9th Cir. 2013)*....................................................17

*Valerio v Boise Cascade 80 F.R.D.626,635n.1(N.D. Cal 1979) afford 645 f.d.699 (9th Cir)*...14

*Vess v Ciba-Geigy Corp.USA, 317 F.3d 1097,1106 (9th Cir. 2003)*..................................17

**Statutes**

*California Code of Civil Procedure Section 338 (c)*....................................................15

*California Code of Civil Procedure Section 338(d)*....................................................15

*California Code of Civil Procedure Section 426.10(a)*.................................................11

*California Code of Civil Procedure Section 426.10 (b)*................................................11

*California Code of Civil Procedure Section 426.30*...................................................11.14

*California Code of Civil Procedure Section 998*........................................................10

*Federal Rule of Civil Procedure Rule 9(b)*.............................................................17

*Federal Rules of Civil Procedure Rule 12 (b)(6)*.......................................................17

## I. Introduction

This is a classic case of the plaintiff making up allegations as it goes along to see if any of it sticks in direct violation of the duty to investigate under rule 11. The result is the direct contradictions of facts and inconsistent facts contained in the original verified complaint and now the first amended complaint which is the subject of the present motion.

On February 7, 2019, Plaintiff MLG filed a verified complaint against defendant Paganetti in the Superior Court of California, County of Orange, case number 30 – 2019– 01068776 – CU – FR – CJC (" Complaint"). Plaintiff  claims were for:(1) Recovery of Foreclosure On Attorneys Lien On Escrow Settlement Proceeds and (2) Fraud.

On June 20, 2019 defendant Paganetti removed the action to the United States District Court Central District of California case number 8:19-cv-01231-AG-JC based upon *U.S.C. Section 1332(a).* Sep filed a 12b(6) motion to dismiss on the second cause of action for fraud.

Prior to the 12(b) motion to dismiss being heard, on July 15, 2019 MLG filed a first amended complaint for recovery of foreclosure on attorney lien on escrowed proceeds; fraud; fraud by ratification of fraud by Wild Carter & Tipton; breach of contract and conversion. The first amended complaint added non--diverse party Wild, Carter & Tipton. ("WCT"). SEP filed a 12(b)(6) motion to dismiss the Second through fifth causes of action of the first amended complaint.

Prior to the 12(b)(6) to dismiss causes of action two through five of the first amended complaint being heard, on September 4, 2019 after MLG's motion for remand the court ordered the case remanded to the state court. On September 5, 2019 MLG filed a first amended complaint in Orange County Superior Court case number 30 – 2019– 01068776 ("FAC")  for recovery of foreclosure on attorney's lien on escrowed settlement proceeds; fraud; fraud by ratification of fraud by WCT, breach of contract and conversion.

1    MLG on September 20, 2019 within two weeks of the order remand  filed a notice of dismissal

2    without prejudice against defendant WCT.

3
       The motion to dismiss is directed to MLG second cause of action for fraud, fourth cause of
4
5    action for breach of contract and fifth cause of action for conversion are based upon the same

6    factual allegations and claims which were claimed by MLG as affirmative defenses to SEP cross

7    complaint in prior legal action entitled *MLG vs SEP Orange County Superior Court Case Number*

8
     *30-2018-009666625*. ("Legal Action"). Judgment in the legal action was entered on November 28,
9
10   2018 after MLG filed its notice of acceptance of SEP *CCP Section 998* offer to compromise filed on

11   November 21, 2018. Accordingly, MLG claims in the second, fourth and fifth causes of action are

12   barred by the doctrines of res judicata. Further, the second, third and fifth causes of action are

13   barred by the three-year statue limitations pursuant to *California Code of Civil Procedure Section*
14
     *338 (c)(d)*. Additionally, the second,  fourth and fifth causes of action are barred by *California Code*
15
16   *of Civil Procedure Section 426.30* which required MLG to litigate all of its claims in the prior legal

17   action. The second, fourth and fifth causes of action  fail to state a claim as a matter of law.

18
       For the reasons stated below the second, , fourth and fifth causes of action should be dismissed
19
     without leave to amend.
20

21                    **II. Summary of Factual Allegations**

22      On August 18, 2015, SEP commenced work for MLG under the terms ever written agreement

23   which included in part the following: "as to the contingency fee cases the proposed arrangement is
24
     that MLG will substitute in but will not pay any cost which it sounds like will not be a problem, if
25
26   we need to advance cost, you will arrange the advancement unless it is [an] emergency

27   circumstance, which we will then cover it, if you or the client cannot. For any files to recover 40%

28   on the fee on, MLG Will receive 12.5%, for any files you recover 33.33% MLG will receive 10% .

This is the normal arrangement I make unless I have to try the case, if I have to try or if we elect that I try the case we will then split the fee 50/50….. As you know for the contingency peak cases, we have to advise the clients of the fee arrangements and have them sign law. If there becomes an issue with any of them, we will work in good faith try to resolve this issue."

MLG alleges SEP brought the Sanford case with him to MLG from WCT and that SEP told Mahaffey that there was a standard 1/3 fee agreement with WCT which has been fully executed by both WCT and Sanford. Sanford was a plaintiff and cross-defendant in the action. ( In reality, as stated in the fee agreement with WCT Sanford was a defendant and cross-complainant in the action.) SEP was the primary attorney on the Sanford litigation, which was a complaint against First American Title seeking recovery of $270,000 dollars of escrow funds. Mahaffey requested SEP to obtain ratification of the WCT contingency fee agreement with MLG by entering into a new agreement that honored the same terms of that standard 1/3 fee agreement with Sanford. On November 16, 2015 SEP created and sent him an unauthorized letter to Sanford that purported to ratify the WCT fee agreement based on the false pretenses it has been signed at WCT and has been fully approved by MLG.("Exhibit 2"). Exhibit 2 stated in part: "attached as Exhibit 1 is your prior attorney representation agreement, by execution of this letter this will confirm that your prior agreements dated May 15, 2015 and July 19, 2015 applying to the following matters with MLG taking over your representation under the same terms and conditions." MLG claims the contents of exhibit 2 containing a prepaid contention defense fee arrangement was not disclosed to MLG and was not approved by MLG and was sent by SEP with no authority from MLG.

On or about January 6, 2016, SEP advised Mahaffey that the Sanford litigation matter had settled and was ready to close and that based on the excellent results in limited amount of time it was ultimately required to close the file, SEP had agreed to reduce the total fee to a 27.5%

1  contingency fee, for a total of $73,326 and MLG was entitled to a 10% referral fee in the amount of

2  $7332.60.  The case on the remaining claims were set for trial on September 27, 2017. MLG alleges

3

4  it submited to SEP a substitution of attorney's which it is claimed SEP refused to sign and claims

5  falsely in an email that he agreed to continue with the case. ( In reality, the email containing the

6  representation SEP was willing to go forward with the representation of Sanford was sent by the

7  client Sanford.)

8

9      MLG advised Sanford not to use SEP and to use MLG. MLG modified the terms of the fee

10  agreement by agreeing to accept all of the attorneys fees recovered in the case. MLG obtained a

11  judgment including attorneys fees in favor of Sanford in the amount of $118,762 which MLG is

12  now claiming is uncollectible. MLK is seeking damages for part of the contingency fee distributed

13  to SEP and recovery of the defense cost awarded.

14

15      **III.   Statement Of Facts**

16  In 2018, MLG in the prior legal action filed an answer and amended answer to SEP cross-

17  complaint for breach of his employment agreement with MLG including causes of action for breach

18  of contract, intentional fraud, concealment, false promise without intent performing, waiting time

19  penalties, unjust enrichment and alter ego. The underlying factual allegations included a failure by

20

21  MLG to pay SEP money to under the terms of a written employment agreement and false

22  representation/concealment by MLG which served as an inducement for SEP to start employment

23  with MLG. The answer and amended answer to the cross-complaint filed by MLG both contained

24  affirmative defenses including estopple, unclean hands, offset, failure to perform an alleged

25

26  contract, concealment of material facts, failure of consideration, conversion of proceeds and failure

27  to perform.

28      Both answers contained the following affirmative defenses and allegations:

Unclean Hands: SEP has come into this court with unclean hands and as a consequence thereof, SEP is barred from recovery herein;

Offset: cross-defendant possesses legal and equitable rights of offset for claims existing against SEP.

Failure to perform an alleged contract: SEP failed to perform any of the promises made to cross-defendant at the time of retention including, but not limited to, working a great number of hours, generating clients that  paid their bills, collecting on bills that SEP generated, failing to exercise the standard of care in working for clients causing cross-defendant to have to duplicate and provide legal services to remedy mistakes made by SEP, misrepresenting the amount of time SEP worked on files, entering false information on time sheets as to work performed or not performed by SEP, concealing information as to the activities that SEP was performing behind a constantly closed office door, concealing the type and nature of disputes in litigation SEP was handling, that had no profitability and should have never been filed by SEP, and many other instances materially breaching the promises made by SEP that induced his hire and induce cross-defendant not to terminate him.

Concealment of material facts: SEP concealed multiple material facts in inducing his hiring including, but not limited to, misrepresenting his ability to generate new clients, misrepresenting the quality of clients he had, misrepresenting his skill set as an attorney, and misrepresenting his ability to perform and bill a minimum amount of agreed hours. On numerous occasions, cross-defendants discovered that SEP was incompetent in handling is legal work causing severe conflict with multiple clients, including causing cross defendant to have to write off thousands of dollars of billed time.

Failure of consideration: SEP conduct and performance completely deprived cross-defendants of all consideration that was to be exchanged to cross-defendant for the compensation that was discussed with SEP when SEP was hired. The lack of consideration includes, but is not limited to, the failure of SEP to generate profitable clients leaving cross-defendant with hundreds of the thousands of dollars of work for free for several clients that SEP brought in and abandoned on the eve of their trials, and causing cross-defendants to have to remedy multiple legal errors.

Conversion of proceeds: SEP stole the fees paid by several clients that were to be paid to cross defendant for both settlements and payments for time billed or to be billed.

On August 29, 2017 MLG sent a letter to SEP threatening to sue and outlining factual allegations which are nearly identical to the factual allegations contained in the second, fourth and fifth causes of action MLG first amended complaint. The August 29, 2017 letter is attached as Exhibit 8 to MLG's FAC.

The factual allegations in the August 29, 2017 letter were included in MLG discovery responses regarding affirmative defenses in the legal action including the following:

Special interrogatory number two: (partial response as follows) this defense is premised on defendant's misappropriating Sanford's settlement proceeds in violation of the Cannons of Ethics where there was no fee splitting that was agreed to in writing by the client, and through complete misrepresentation and a forged signature on the letter that approved the fee agreement.

Special interrogatory number three: (partial response as follows) This defense is premised on defendant's misappropriating Sanford's settlement proceeds in violation of the Canons of Ethics where there was no fee splitting that was agreed to in writing by the client, and through complete misrepresentation and a forged signature on a letter that approved the fee agreement.

MLG accepted SEP *California Code of Civil Procedure Section 998* offer to compromise filed on November 21, 2018 incorporated into a judgment filed on November 28, 2018 resulting in the court dismissing the cross complaint after the occurrence of the following: MLG demand letter dated August 29,2017 containing claims and allegations identical to second, fourth and fifth causes of action in the first amended complaint; MLG filing an answer and the amended answer to the cross-complaint containing allegations of wrongful conduct similar to claims in the FAC and serving discovery responses containing factual responses similar if not identical to claims in the FAC.

## IV. Legal Argument

### A. MLG Second, Fourth and Fifth Causes Of Action Are Barred By The Doctrine Of Res Judicata and California Code of Civil Procedure Section 426.30.

The doctrine of res judicata is intended to prevent multiple litigation causing vexation and expense to the parties and wasted effort and expense in judicial administration by precluding parties from relitigating issues they could have raised in a prior action concerning the same controversy. *Panos v Great Western Packing Co.(1943) 21 Cal 2d.636,637.* The court may take judicial notice in support of a rule 12(b)(6) motion. *Valerio v. Boise Cascade 80 F.R.D.626,635n.1(N.D. Cal 1979) afford 645 f.d.699 (9th Cir).* In determining the issue of res judicata California State Law should be applied. *Marrese v American Academy of Orthopedic Surgeons (1985) 470 U.S. 373.* Further, in determining whether a second complaint states a new cause of action California courts apply the primary rights theory, under which the invasion of one primary right gives rise to single cause of action. *Slater v Blackwood (1975) 15 Cal 3d 791,795.* The most important criteria in determining that two suits concern the same controversy is whether they both arose from the same transactional nucleus of facts. *Nakash v Superior Court (1987) 196 Cal App.3d 59,68.* If so, the judgment in the

first action is deemed to adjudicate for purposes of this second action every matter which was urged, and every matter which might have been urged. *Panos*, *supra at p.638*. Res Judicata precludes parties from splitting a cause of action into a series of suits in piecemeal litigation, since it operates as a bar not only when the grounds for recovery in the second action are identical to those pleaded in the first but also where different theory or request for relief is asserted. *McNulty v Copp (1954) 125 Cal App 2d 697,705.*

 *California Code of Civil Procedure Section 426.30* serves the same purpose as the doctrine of res judicata by requiring the settlement in a single action of all conflicting claims between the parties arising from the same transaction. *Section 426.30* does not operate to bar issues previously litigated; rather, it applies to related causes of action which were not litigated in a prior action between the parties..

 Section 426.30, subdivision (a), provides that "if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related course of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any legal action assert against the plaintiff the related cause of action not pleaded." As used in the compulsory cross-complaint statute, the term "complaint" includes both a complaint and cross-complaint (*section 426.10 (a)*), and the term "plaintiff" includes both a plaintiff and cross-complainant (*section 426.10(b)*). The phrase "related causes of action" in section 426.30 is defined as "a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." (*section 426.10 (c)*). The term transaction is construed broadly and is not confined to a single, isolated act or recurrence but may embrace a series of acts or occurrences logically interrelated. *Saunders v. New*

1  *Capital For Small Businesses, Inc. (1964) 231 Cal App.2d 324,336. Curry Medical Specialties, Inc.*

2  *v. Bowen (1982) 231 Cal App.3d 774,777.*

3

4  In interpreting the relatedness requirement the court in *Curry Medical Specialties, Inc,* found

5  guidance in federal decisions construing the compulsory counterclaim statute found in *F.R.C.P. Rule*

6  *13(a),* and held that the relatedness standard does not require an absolute identity of factual

7  backgrounds for the two claims, but only a logical relationship between them. The logical

8  relationship approach is the majority rule among the federal courts. The word transaction in *Rule*

9  *13(a)* cannot be read in such a restrictive sense as to limit compulsory counterclaims in an action for

10  breach of contract to those addressed to the specific breach on which a plaintiff bases his claim for

11  breach. The spirit and intent of *Rule 13(a)* requires that the entire contractual relationship be

12  deemed to be included within the word "transaction" . *King Bros. Productions, Inc. v. RKO*

13

14  *Teleradio Pictures,Inc. 208 F.2d 271,275( S.D.N.Y.1962).*

15  In *Currie Medical Specialties , supra,* Curry Medical Specialties, Inc., and Newell Bowen,

16  both distributors of labels to hospitals, contracted for Currie to stop selling its labels and instead sell

17  Bowen's labels. A year later, Bowen sued Currie in federal court for unfair competition and

18  violation of the Landham Act alleging Currie usurped Bowen's business during their contractual

19

20  relationship. In its answer, Currie alleged Bowen was estopped from asserting his claims because he

21  breached their agreement and made misrepresentations. The case was ultimately dismissed.

22  *Curry,supra at p. 775-776.*

23  In *Allign Technology Inc. v. Tran(2009) 179 Cal App. 4th 949*, Align an employer sued it's

24

25  employee Tran alleging Tran was hired to protect its intellectual property but instead

26  misappropriated it, competed against Align, and made unauthorized charges to Align's accounts,

27  thereby breaching his employment agreement and the duty of loyalty. Tran cross-complaint, alleged

28

Align had wrongfully terminated his employment and breached a stock option agreement. In its answer to Tran's cross-complaint, Align alleged Tran's claims were barred under the doctrine of unclean hands and estopple based on Tran's own acts or omissions. The lawsuit was ultimately settled and was dismissed.

Two years later, Align again sued Tran alleging he had breached his contract with Align, used company funds to assist a competitor, and misappropriated Align's patents. *Align,supra at p.955.* The court held Align's present claims arose out of the same employment relationship and concerned the same breaches of reciprocal obligations as were the subject of Tran's earlier cross-complaint. Further, Align had alleged in an earlier answer to Tran's cross-complaint the same misconduct as it now alleged in the current complaint. The court found Align's current claims were therefor logically related to Tran's cross complaint, and were barred because Align failed to file a cross complaint in the earlier case. Align,supra, p.965.

In *Saunders, supra, 231 Cal App 2d, 324*, New Capital For Small Businesses, Inc ("New Capital") sued Saunders on a common count to recover $14,000 Saunders had misappropriated. In his answer, Saunders alleged he was entitled to the money by reason of services he had rendered the company in selling it stock and raising working capital. The lawsuit was ultimately resolved in New Capitals favor. *Saunders, supra, p. 327 – 328.*

A year later Saunders sued New Capital for quantum meruit for $14,000 alleging it was owed him for services performed in connection with providing a loan to a third-party. *Saunders, supra. p. 326.*

The court held that even though the services for which Saunders alleged he was owed payment were different in the two actions-selling stock and the first action versus providing a loan in the second the foundation of both claims was the party relationship and right to recovery flowed from the same

relationship thereby barring Saunders lawsuit because of failure to file a cross complaint in the earlier action.

Accordingly, all of the claims in the FAC were raised as affirmative defenses in the legal action and claims in the FAC are all logically related to the employment agreement between SEP and MLG, breach of contract and tort claims raised by SEP in the cross-complaint. Therefore, section 426.30 and the doctrine of res judicata bars each claim in the FAC which is the subject of this motion to dismiss.

In *Eichman v. Fotomat Corp.(1983) 147 Cal App. 3d 1170*, the court made the following statement: "The Eichman's final contention, judgment in the first action is not res judicata because it follows a settlement rather than a trial, is absurd. Such or rule would allow a plaintiff to accept the settlement from the defendant and then turn around and sue again. For this reason, the judgment following a settlement bars future actions to the same extent has a judgment entered after a full trial. In the present case MLG accepted the benefits of *CCP Section 998* offer to compromise. The court may take judicial notice in support of a rule 12(b)(6) motion. *Valerio v. Boise Cascade 80 F.R.D.626,635n.1(N.D. Cal 1979) afford 645 f.d.699 (9th Cir)*

In the present case the doctrine of res judicata and *section 426.30 s*hould apply to MLG's causes of action for fraud,breach of contract and conversion because the parties were the same and, a judgment was rendered in the case based upon MLG acceptance of defendant's CCP 998 offer to compromise. Further, the factual issues raised as a affirmative defenses are the the same as stated in the second, fourth and fifth causes of action and/or could have been raised since the cross complaint involved the employment of SEP by MLG and same claims in the second, fourth and fifth causes of action were outlined in a demand letter prior to the legal action being filed. Accordingly, all of the claims in the FAC were raised as affirmative defenses in the legal action and claims in the FAC are

1   all logically related to the employment agreement between SEP and MLG, breach of contract and

2   tort claims raised by SEP in the cross-complaint. Therefore, section 426.30  and the doctrine of res

3   judicata bars each claim in the FAC which are the subject of this motion to dismiss.

4

5   **B. MLG Claim Of Fraud and Conversion Are Barred By The Three-Year Statue**

6   **Limitations CCP Sections 338 (c)(d).**

7      A fraud lawsuit is required to be filed within three years before plaintiff either discovered facts

8   constituting the fraud or with reasonable diligence could have (should have) discovered those facts,

9

10  whichever comes first.  *Kline v Turner (2001) 87 Cal App.4th 1369,1374. California Code of Civil*

11  *Procedure Section 338(d).* An act of conversion must be filed within three years under *California*

12  *Code of Civil Procedure Section 338(c)*.

13     In the present case MLG has attached as Exhibit 6 to its complaint a letter dated January 6,

14
    2016, to John C. Sanford signed by Douglas Mahaffey containing statements of the conclusion of
15
16  this litigation matter with First American Title Insurance Company and "pursuant to your

17  ratification of the Mahaffey Law Group fee agreement, you have confirmed that Mahaffey Law

18  Group is entitled to the distribution of 33.33% of the proceeds for the net sum of $73,326. You have

19
    recognized that there is a separate fee split involving Mr. Paganetti and this firm, that you have
20
21  previously agreed to." To the extent MLG is claiming any fraud or misrepresentation regarding

22  forging Douglas Mahaffey signature on the ratification of the fee agreement correspondence dated

23  November 16, 2015(exhibit 4 to  MLG complaint) or any claims regarding misrepresentation

24
    regarding the content of the contingency fee or conversion of the contingency fee those claims are
25
26  barred by the three year statute of limitations because the action was filed on May 7, 2019 more

27  than three years after the above January 6, 2016 correspondence to John Sanford.

28

MLG's  claims entitlement to delayed discovery based upon the conclusionary allegation it did not discover the alleged fraud until August 11, 2017 when SEP left employment with MLG. A plaintiff who claims delayed discovery must plead facts showing: (a) lack of knowledge;(b) lack of the means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date),(c) how and when the plaintiff did actually discover the fraud . *Fox v.Ethicon Undo-Surgery, Inc. (2005) 35 Cal. 4th 797,808. Baker v. Beech Aircraft Corp. (1979) 96 Cal App.3d, 321,327-328.* These necessary allegations are lacking in MLG's claims for fraud and conversion.

Under the delayed discovery rule, "a cause of action accrues and statue of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause. *Fox, supra p.803.* A plaintiff has reason to discover a cause of action when he has reason at least to suspect a factual basis for its elements. *Fox,supra p. 807.* The limitations. begins to run no later than the time the plaintiff learned, or should have learned, the facts essential to his claim. *Gutierrez v. Mofid (1985) 39 Cal 3d  892, 897.* So long as a suspicion exists, it is clear that the plaintiff must go find facts and cannot wait for facts to find him. *Jolly v. Eli Lily& Co.(1988) 44 Cal 3d 1103,1112.* Once put on inquiry notice, plaintiffs are required to conduct a reasonable investigation and are charged with knowledge of the information that would have been revealed by such investigation. *Fox,supra at p. 808.*

In the present case, MLG's FAC has attached as Exhibit 6 a letter dated January 6, 2016, to Sandford signed by Douglas Mahaffey containing statements of the conclusion of litigation with First American Title Company ("FATC") and acknowledgment of the ratification of the MLG fee agreement confirming 33.33% of the proceeds for distribution to MLG. The title of the letter was "Sanford v. Sanford,et al, OCSC Case No: 30-2015-00767156; Settlement with FAC. Any attorney

looking at the heading would be put on inquiry notice there were additional parties who had not

settled the case. Paul Sandford was the plaintiff who sued the client John Sandford and FAC for

damages and declaratory relief, breach of statutory duty, conversion, fraud, bad faith, injunctive

relief. John Sanford filed a cross-complaint against Paul Sandford and FAC for breach of

promissory note, breach of implied covenant of good faith and fair dealing, fraud, reformation of

deed of trust, conversion, breach of fiduciary duty, accounting and declaratory relief.

MLG only needed to look to the complaint and cross complaint to determine the fact the case did

not settle as to all of the parties. Obviously, MLG through Douglas Mahaffey looked through the

litigation files in order to obtain the case number and the name of one of the defendants.

Accordingly, the statute began to run on January 6, 2016 the the date Douglas Mahaffey sent the

letter to Sandford more than three years prior to the filing of the original complaint on February 7,

2019.

### C. MLG Second Cause Of Action For Fraud Fails To State A Claim

Dismissal under *Federal Rule of Civil Procedure Rule 12 (b)(6)* is proper when the complaint

either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable

legal theory. *Somers v Apple 729 F. 3d 953,959.(9th Cir. 2013).* To survive a motion to dismiss, a

complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.

*Ashcroft v Iqbal, 556 U.S.662 (2009).* Fraud – based allegations are governed by *Federal Rule of*

*Civil Procedure Rule 9(b)* demands that, when averments of fraud are made, the circumstances

constituting the alleged fraud be specific enough to give defendants notice of the particular

misconduct so they can defend against the charge. *Vess v Ciba-Geigy Corp.USA, 317 F.3d*

*1097,1106 (9th Cir. 2003).* Fraud allegations must include the "time, place, and specific content of

the false representations as well as the identities of the parties to the misrepresentations". *Swartz v*

*KPMG LLP,476 F.3d 756,764,(9th Cir.2007)*. In other words, averments of fraud must be

accompanied by the who, what, when, where, and how of the misconduct charged. *Vess, supra at p.*

*1107.*

A plaintiff must plead and prove the following elements to state a claim for misrepresentation as

follows: (1) a material misrepresentation of fact; (2) knowledge of the falsity when statement made;

(3) intent to defraud;(4) justifiable reliance; and (5) resulting damage. *Engalla v Permanente*

*Medical Group,Inc.(1997) 15 Cal.4th 951.*

MLG is apparently contending it did not read the contingency fee agreement between WCT and

Sanford and there is no allegation of inability to have read the agreement. For fraud purposes,

failure to read the agreement coupled with a reasonable opportunity to do so, renders reliance as

unjustifiable. *Rosenthal v.Great W. Fin. Sec.Corp.(1996) 14 Cal. 4th 394,424.* Further, there can be

no justifiable reliance because the employment agreement between MLG and SEP states MLG is

only entitled to receive a referral fee of 10% on a contingency fee cases originated or handled by

SEP. There is no allegation the subject fee alleged to be misrepresented was not a fee which was due

under the terms of the employment agreement.

Further, the complete email regarding the employment agreement was not attached by MLG to

any of the prior complaints including the FAC. The complete emails were attached in the cross-

complaint filed by SEP in the earlier legal action and is part of request for judicial notice number

one. The two emails include one from SEP to Mahaffey dated August 18, 2015 at 1:41 PM which

included a list of cases in which MLG would be substituting in as council including "Paul Sanford

vs First American Title and John Sanford (our client)". Mahaffey sent a confirmation email on

August 18 2015 at 2:18 p.m. Accordingly, MLG had knowledge John Sanford was a defendant in

the case entitled vs John Sanford v. First American Title.. Any claims regarding misrepresentation by plaintiff regarding misrepresentation of providing a defense cannot survive because plaintiff cannot claim justifiable reliance based on this notice. Also, the representation agreement clearly states representation is being provided to John Sanford on claims the cross complaint.

The FAC further fails to completely disclose that after SEP terminated his employment with MLG that MLG notified Sanford he would continue to represent him and that thereafter MLG through Mahaffey actively solicited Sanford to remain as the attorney of record and negotiated a modification to the existing agreement to allow MLG to recover all of the attorneys fees recovered in the case while confirming all of the other terms. accordingly, there can be no justifiable reliance by MLG because of the confirmation of the prior fee agreement which is the subject of the fraud allegations.

### D. Plaintiff Cannot Maintain a Cause Of Action For Breach of Contract

Under California law, the elements of a breach of contract claim are:(1) the existence of a valid contract between the parties:(2) plaintiffs performance:(3) defendant's unjustified or unexcused failure to perform; and (4) damages to plaintiff caused by the breach. *Careau & Co. v Security Pacific Business Credit, Inc., (1990) 222 Cal App 3d 1371,1388.*

Paragraph 125 of the first amended complaint alleges: "On or about January 6, 2016 Paganetti breached the terms of the fees splitting agreement by not releasing the entire one third fee 90,018 that John Sanford had agreed to pay from the FATCO settlement in the amount of 270,000.

Firstly, the only agreement alleged is one for fee split where Mahaffey would receive 10%. There are no other agreements alleged where MLG would be entitled to receive any other amount. Without an agreement there can be no breach and in this case MLG agreed to the amount which was confirmed in the letter between MLG and John Sanford in the amount of $73,326 (exhibit 5 )to the

1  first amended complaint. MLG was entitled to 10% of the amount of $7,332. which is what it

2  received.

3

4        **E. MLG Fails To State a Claim For Conversion**

5        In order to establish a cause of action for conversion a plaintiff must establish actual

6  interference with his ownership or right of possession. Where the plaintiff neither has title to the

7  property to be converted nor possession thereof, he cannot maintain an action for conversion. *Moore*

8  *v. Regents of the Univ. Of Cal. (1990) 51 Cal 3d 120,126.* In the present case MLG has merged

9

10 several concepts a of contract and misrepresentation in this cause of action none of which establish

11 it had title to any of the money of the fee split between MLG and SEP which was distributed to

12 Paganetti. Further, for the same reasons set forth in subparagraph F there was no agreement for

13 MLG to receive anything other than the 10% it agreed upon in the agreement with SEP and amount

14 received from the FATCO settlement.

15

16        **IV. <u>Conclusion</u>**

17 Based upon the above it is respectfully submitted the motion to dismiss the second, fourth and fifth

18 cause of action should be granted without leave to amend.

19

20

21 Date; 10/9/19

22

23                              Steven E Paganetti

24

25

26

27

28